UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HERBERT SAMUEL CHRISTENSEN, JR., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 14-134-DCR |
| v. | ) ) | |
| UNITED STATES OF AMERICA, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Herbert Samuel Christensen, Jr., was formerly an inmate confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington").[1]  While incarcerated, Christensen filed a *pro se* Complaint under the Federal Tort Claims Act, 28 U.S.C. § 2671, ("FTCA") seeking recovery for the "personal physical and psychological injuries" he allegedly sustained as a result of the defendants' actions and inactions.  [Record No. 1, p. 1] Christensen seeks compensatory damages of $10,000.00.   After conducting the initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court dismissed all but one of the plaintiff's claims.  [Record No. 6]   The only surviving claim is against the United States under the FTCA for negligence due to an alleged violation of Kentucky's seatbelt laws.

This matter is currently pending for consideration of the United States' motion to dismiss for failure to state a claim or, in the alternative, for summary judgment.  [Record No. 14-14]  Christensen has not filed a response to the defendant's motion, and the time to do so

---

[1]     Per the Federal Bureau of Prisons' website, Christensen was released from custody on August 18, 2014.  *See* www.bop.gov/inmateloc/ (last checked April 22, 2015).

has expired.  *See* LR 7.1(c).  For the reasons discussed below, the Court will grant the defendant's motion for summary judgment.

## I.

On July 1, 2013, Christensen was taken by medical escort to the University of Kentucky Hospital ("UK Hospital").  He claims that, prior to leaving FMC-Lexington, he was forced to sit sideways due to the "small and narrow" seat on the wheelchair-accessible transportation van.  According to Christensen, this caused the seatbelt to rest improperly on his neck, which injured his "left neck and the nerves in his left ulnar nerve distribution." [Record No. 1, p. 4]  Specifically, he claims "permanent nerve damage to his left ulnar nerve [sic] pain, tingling and numbness and burning."  [*Id.* at 3]   When Christensen asked an officer about the seatbelt, he was told that "was the best [the officer] could do."  [Record No. 14-1, p. 22]  Christensen also claims that, during the return trip on July 1, 2013, the seatbelt was not strapped around him at all, causing him undue stress and psychological injuries, including "mental anguish, nightmares, anxiety, and indignity of being dehumanized." [Record No. 1, p. 6]  The plaintiff argues that the failure to properly use the seatbelt violated Kentucky state law, citing Ky. Rev. Stat. 189.125(6).  [Record No. 1, p. 12]

On August 6, 2013, Christensen filed an Informal Resolution Form at FMC-Lexington, complaining of the staff's failure to use seatbelts but requesting no specific relief. On the same date, Christensen was provided a Request for Administrative Remedy form, which he filed on August 9, 2013.  [Record No. 14-1, p. 57]  The Warden responded on August 29, 2013, finding that the July 1, 2013 medical transport staff properly secured a seatbelt around the plaintiff.  The Warden stated that, during the medical trip, Christensen

had not communicated to the escorting staff that he was uncomfortable and made no attempt to readjust his position.  Christensen was reminded that, upon his return to the institution, he was escorted to the FMC-Lexington clinic for a routine, post-medical-trip assessment and reported no pain or distress.  The Warden pointed out that it was not until August 2, 2013, that Christensen reported to the clinic with claims of worsening numbness and tingling in the left arm since the last medical trip.  The Warden provided a detailed summary of Christensen's prison medical records and advised that if Christensen was not satisfied with the response to his administrative complaint, he could appeal to the Regional Director. [Record No. 14-1, pp. 58-59]  Christensen appealed the Warden's determination.

On November 13, 2013, the Regional Director found that the Warden had adequately addressed Christensen's complaints and that the actions of staff were within the BOP's policies and procedures.  Because Christensen did not provide any evidence that he had been transported in an improper or unsafe manner, his appeal was denied.  [Record No. 14-1, p. 61]  Christensen did not appeal this decision to the BOP's Central Office.[2]  Instead, Christensen filed an administrative tort claim with the BOP regarding the alleged seatbelt infractions.  [Record No. 14-1, pp. 20-22]  On December 23, 2013, the BOP rejected this claim as duplicative of a previously-filed tort claim concerning the failure to use seatbelts on medical transports on July 9, 2012 and September 6, 2012.  On March 17, 2014, the BOP

---

[2]      28 C.F.R 542.15 (a) provides that appeals to the General Counsel in the appropriate form (BP-11) must be filed within 30 days of the date of the Regional Director signed his response (BP-10).  The last entry in the BOP's Administrative Remedy Records for Christensen is the denial of his BP-10 on November 13, 2013.  [Record No. 14-1, p. 55; *See also* Record No. 14-6, p. 276]

informed Christensen that the duplicative and responses were closed.  [Record No. 14-1, pp. 4, 27]  Christensen then filed suit in this Court.  [Record No. 1]

## II.

The United States seeks dismissal pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, summary judgment under Rule 56.  Rule 12(b)(6) provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The obligation to convert to a summary judgment motion is mandatory if matters outside the pleadings are not excluded by the Court.  *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion).  However, a court may consider matters outside of the pleadings without converting to a Rule 56 motion if the documents are "referred to in the complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The government has submitted numerous exhibits and affidavits, all of which the Court has considered in evaluating the Defendant's motion.   Accordingly, this motion will be considered under the Rule 56 summary judgment standard.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Despite the fact that its motion is unopposed, the United States still bears this burden. *See Id.* Once the moving party has met its burden of production, the nonmoving party must present "significant probative evidence" of a genuine dispute to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As outlined above, Christensen has not disputed the facts outlined in the government's motion.

## III.

Christensen asserts state law claims of negligence and a violation of Kentucky's seatbelt law. Ky. Rev. Stat. § 189.125(6) provides that "[a] person shall not operate a motor vehicle manufactured after 1981 on the public roadways of this state unless the driver and all passengers are wearing a properly adjusted and fastened seat belt." In addition, Kentucky law provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or

forfeiture is imposed for such violation." Ky. Rev. Stat. § 446.070. The latter provision simply "codifies the common law doctrine of 'negligence *per se*' in Kentucky." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008). As noted in the Court's prior Order, [Record No. 6, p. 10] Christensen's negligence claims must be directed against the United States under the FTCA, 28 U.S.C. § 2679(b)(1).

Generally, the United States is immune from suit except where its sovereign immunity is explicitly waived. *United States v. Mitchell*, 445 US. 535, 538 (1980). The FTCA provides a limited waiver of sovereign immunity; it neither creates a cause of action against the United States nor provides a means of enforcing federal statutory duties, but it allows state tort actions against the United States for personal injuries caused by governmental employees acting within the scope of their employment. See 28 U.S.C. § 1346(b). This waiver of immunity is limited to cases in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674. Courts have construed this statute to include federal inmates' claims alleging personal injuries sustained while incarcerated caused by the negligence of government employees. *See United States v. Muniz*, 374 U.S. 150 (1963).

The United States may only be held liable if the conduct amounts to negligence in accordance with the law of the state where the conduct occurred. *Federal Deposit Ins. Corp v. Meyer*, 510 U.S. 471, 478 (1994) (in FTCA action, the law of the state where the events occurred controls); *See also Lyons v. Brandly*, 430 F. App'x 377, 381 (6th Cir. 2011); *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991). Liability under the FTCA is governed by state law. *See Rayonier Inc. v. United States*, 352 U.S. 315 (1957); *Huffman v.*

-6-

*United States*, 82 F.3d 703, 705 (6th Cir. 1996).  Accordingly, Kentucky tort law applies to Christensen's claim.

The defendant moves for summary judgment on Christensen's FTCA claims, asserting that the plaintiff cannot meet the statute's requirements.  Specifically, the United States asserts that the plaintiff fails to show the requisite physical injury as required by 28 U.S.C. § 1346(b)(2), which provides:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Courts have found this physical injury requirement similar to that under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e).  *See Glover–Bryant v. Uptagraft*, 2009 U.S. Dist. LEXIS 79342, at *7 (E.D. Ky. Sept. 2, 2009) (Generally, § 1997e(e) applies to all types of federal prisoner lawsuits, including FTCA claims).  Under this section, the United States Court of Appeals for the Sixth Circuit has held that, while a physical injury need not be significant, it must be more than *de minimis* to proceed.  *Jarriett v. Wilson*, 414 F.3d 634 (6th Cir. 2005).

Christensen alleges both physical and emotional injuries.  [Record No. 1, p. 1]  His physical injury purportedly resulted from the position of the seat and seatbelt when he was belted on the first leg of his medical transport to the UK Hospital; the emotional injury, he claims, was caused by the trauma of not being belted on the return trip from the UK Hospital back to FMC-Lexington.  However, claims for emotional or mental injury will not stand without a prior showing of physical injury.  42 U.S.C. § 1997e(e).  *See also Glover-Bryant*,

2009 U.S. Dist. LEXIS 79342, at *7 (absent a showing of physical injury, compensation sought for trauma and emotional damages is barred by federal law); *Taylor v. United States of America, et al.*, 161 F. App'x 483 (6th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004); *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001); *Allah v. Al-Hafeez*, 226 F.3d 247, 250-51 (3d Cir. 2000); *Davis v. District of Columbia*, 158 F.3d 1342, 1348-49 (D.C. Cir. 1998).

The FTCA does not define "physical injury," but when examining the related statute, courts have construed § 1997e(e) to require more than a *de minimis* showing of physical injury.  *Wardell v. U.S.*, 2013 U.S. Dist. LEXIS 126473, at *5 (E.D. Ky. Sept. 4, 2013); *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003) (surveying the authorities and finding that the courts of appeals have read § 1997e(e) to require "a less-than-significant-but-more-than-de minimis physical injury as a predicate" to allowing the successful pleading of an emotional injury); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*"); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("the physical injury must be more than *de minimis*, but need not be significant") *rev'd en banc in part on other grounds*; *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  Thus, while the physical injury suffered by the plaintiff need not be significant, it must be more than *de minimis* to proceed under the FTCA.  *Jarriett*, 414 F.3d at 640.

When a prisoner plaintiff is unable to establish more than a *de minimis* injury, the defendant is entitled to summary judgment.  *See Jarriett*, 414 F.3d at 400–01; *Shain v.*

*Grayson County, Ky.*, 2011 U.S. Dist. LEXIS 125083, at *4 (W.D. Ky. Oct. 28, 2011) (*de minimis* injury where the transport van was not involved in an accident and plaintiff only alleged red and swollen hands from the restraints and discomfort during the trip); *Quinlan v. Pers. Transp. Servs. Co., LLC*, 329 F. App'x 246, 249 (11th Cir. 2009) (temporary chest pain, headache, difficulty breathing, and back pain during transport van ride were no more than *de minimis* injury which barred claim under § 1997e(e)); *Corsetti v. Tessmer*, 41 F. App'x 753, 755–56 (6th Cir. 2002) (two small bruises on shoulder that did not require medical attention were *de minimis* injuries and not actionable under § 1997e(e)); *Oliver*, 289 F.3d at 629 (leg pain, back pain, and a painful canker sore were *de minimis* injuries); *Siglar*, 112 F.3d at 193 (bruised ear for three days was *de minimis* injury and did not meet § 1997e(e) standard).  Additionally, the temporary aggravation of a pre-existing condition is considered a *de minimis* injury.  *See Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006) (minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries); *McKinney v. United States*, 2013 U.S. Dist. LEXIS 112409, at *15 (N.D. Tex. Aug. 9, 2013) (lower back pain and minor abrasions to the elbow were *de minimis* where plaintiff had full range of motion and no evidence of a back injury, other than pre-existing disc degeneration).

It appears that Christensen's medical issues pre-date the transport incident.  In support of its motion for summary judgment, the United States submitted various medical entries and BOP records regarding Christensen's alleged injuries.  [*See* Record Nos. 14-1, 14-2, 14-6, 14-7, 14-8, 14-9, 14-10, 14-11, 14-12, 14-13]   On January 26, 2012 – a year and a half before the seatbelt incident – Christensen underwent an emergency encounter at Health

Services, complaining of "radiation of numbness in his left arm." [Record no. 14-2, pp. 9-12]  He was diagnosed with an atrial fibrillation.  The following year, Christensen began a series of counseling sessions following complaints of irritability, difficulty sleeping, nervousness, and worry.  He was taught relaxation techniques, sleep hygiene, imagery, mindful meditation, and diaphragmatic breathing.

On May 23, 2013, a follow-up encounter was performed at Health Services.  [Record No. 14-2, pp. 17-19]  Christensen stated that he had had discomfort in his left arm and into his shoulder for 2 to 3 months.  He did not recall any specific trauma to the area and stated that he had mild symptoms of positional pain in the shoulder.  The examination revealed tenderness and decreased range of motion in the shoulder.  On May 28, 2013, x-rays of Christensen's cervical spine and left shoulder were taken, and he was diagnosed with degenerative disk disease.  [Record No. 14-2, pp. 21-22]  He was found to be otherwise in good health.

On July 1, 2013, the date of the alleged injury, Christensen was transported to UK Hospital Gill Heart Institute for a scheduled medical appointment regarding his atrial fibrillation.  As noted above, Christensen was seen for a routine post-trip medical examination encounter at Health Services and reported no complaints.  [Record No. 14-2, pp. 25-27]  The following week, Christensen complained of increased anxiety symptoms and continued to experience sleep disturbance.  [*Id.* at 32]  When asked if he could identify a trigger for his increased symptoms of anxiety, Christensen discussed being taken out for a medical trip on July 1, 2013, and experiencing anxiety for not being restrained by a seatbelt during the trip.  He maintained that this had happened repeatedly and that he experienced

-10-

nightmares that prevented him from getting adequate sleep.  He also reported experiencing mild impairment in his functioning, noting that he had difficulty engaging in daily activities. Christensen acknowledged that he attended work, ate, showered, and exercised daily.  After a follow-up visit, Christensen denied experiencing significant mental health problems, clinically significant symptoms of anxiety, or significant impairment in his functioning.  [*Id.* at 33]

On August 2, 2013, Christensen was examined at Health Services, complaining of tingling and numbness in his left arm that he attributed to the July 1, 2013 medical transport. [Record No. 14-2, pp. 34-36]  Although he admitted that he had experienced this before the seatbelt incident, he claimed that the transport worsened the pain.  Christensen was examined, and his shoulder, wrist, spine, hand, and fingers were found normal with a full range of motion.  Christensen was assessed with no significant findings and no apparent distress.  Later that month, a Chronic Care encounter was performed at Health Services.  [*Id.* at 37-41]  Christensen complained of left shoulder pain which radiated to his forearm and decreased range of movement.  [Record No. 9-2]  Christensen also reported getting a tingling sensation in his fingers.  The plaintiff's recent x-rays were verified, showing degenerative disc disease.  He was able to shrug his shoulders, raise his left arm above his head laterally and anteriorly and reach behind his head and back.  Christensen stated he had some pain during these motions.  [*Id.*]  He had a limited range of movement when moving his neck to the left, and he was referred to Physical Therapy.

On August 20, 2013, Christensen was evaluated at Rehabilitation Services.  [Record No. 9-3]  He complained of left shoulder pain and tingling in the left thumb, index, and

middle fingers.  Christensen stated that the pain and numbness had started three months

earlier (around May 2013).  [*Id.*]  He could not attribute the pain to any particular injury, but

noted that he had started to lift weights – 180 pounds – on the recreation yard three months

ago, resting the bar on the back of his shoulders and neck, and believed that the symptoms

might have been a result of the weightlifting.  Christensen denied any other previous injuries

to his left shoulder and neck, but he also noted that he worked sitting in front of a desk all

day long and could perform all activities of daily living without too many difficulties.  The

Rehabilitation Services found that Christensen's pain was likely due to two separate injuries.

[*Id.* at 2]  The left shoulder pain was most likely caused by Christensen's weightlifting, and

the numbness in the left hand probably resulted from poor posture.  He exhibited signs of an

upper cross postural pattern syndrome which was made worse by his working in front of a

computer all day.  The Rehabilitation Services physician recommended physical therapy

once or twice a week for several weeks.  After a month, this plan was discontinued for lack

of progress.  [Record No. 14-2, p. 47]  In a final attempt to document his injuries, the

plaintiff has submitted a report of an MRI from September 22, 2014, after he was released

from BOP custody.  [Record No. 9-4]  This report confirms Christensen's degenerative disc

disease diagnosis, "manifested by loss of disc space […] throughout the cervical spine."  [*Id.*

at 1]

   While the plaintiff alleges physical injuries such as permanent nerve damage, pain,

burning, and numbness, he has produced no medical documentation substantiating any

physical injury connected to the transport other than his pre-existent degenerative disc

disease.  The United States has provided two doctors' declarations and documentary medical

evidence showing that the plaintiff suffered only *de minimis* injuries.  Cast in the light most favorable to Christensen, at most, the evidence demonstrates that he suffered back and shoulder pain, numbness, and tingling, which were not serious enough to mention to medical staff the day of his medical transport and are insufficient to support his claim under the FTCA.  As a result, his FTCA claim is barred by 28 U.S.C. § 1346(b)(2).

**IV.**

The undisputed facts fail to establish an injury sufficient to proceed under the FTCA. Further, the defendant is entitled to summary judgment as a matter of law.  Accordingly, it is hereby

**ORDERED** as follows:

1.     Defendant United States of America's motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Record Nos. 14 and 14-14] is **GRANTED**.

2.     This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3.      A final and appealable Judgment shall be entered this date.

This 27th day of April, 2015.



Signed By:

*Danny C. Reeves*

United States District Judge

-13-